■ In the Matter of HARRIET L. BOIKO et al., Respondents, v RICHARD HIGGINS, as Commissioner of the New York State Division of Housing and Community Renewal, et al., Appellants. [599 NYS2d 813] —Judgment, Supreme Court, New York County (Beverly S. Cohen, J.), entered May 10, 1991 which, pursuant to CPLR article 78, annulled an order and opinion of the Deputy Commissioner for Rent Administration of the New York State Division of Housing and Community Renewal (DHCR) which found the subject premises exempt from Rent Stabilization and remanded the matter to the DHCR for redetermination unanimously reversed, on the law, without costs, DHCR's order and opinion are reinstated, and the CPLR article 78 petition is dismissed.

Section 5 (a) (10) of the Emergency Tenant Protection Act of 1974 (ETPA; L 1974, ch 576, § 4 [McKinney's Uncons Laws of NY § 8625 (a) (10)]) and an identical provision of the Rent Stabilization Code (Code [9 NYCRR 2520.11 (j)]) exempt from the Rent Stabilization Law "housing accommodations in buildings operated exclusively for charitable purposes on a nonprofit basis." At issue on this appeal is whether there is a rational basis for DHCR's determination that a building owned and operated by St. Mary's Home for Working Girls, which contains 152 rooms, some of which are occupied by petitioners, comes within the Code exception *(Matter of Pell v Board of Educ.,* 34 NY2d 222, 231).

St. Mary's has asked each of the complaining tenants, hereafter "the petitioners," to vacate their rooms because they have lived there for more than four years. On January 24, 1986 the District Rent Administrator ("DRA") dismissed the petitioners' complaints upon a finding that St. Mary's is exempt from the ETPA. The petitioners filed a petition for administrative review ("PAR") to challenge the DRA's order,

pursuant to which the DHCR considered numerous submissions by the parties and examined the premises. On March 29, 1989 the DHCR issued an order and opinion which insofar as is pertinent herein denied the PAR, finding that the housing accommodations were exempt from the Rent Stabilization Law pursuant to section 5 (a) (10) of the ETPA and section 2520.11 (j) of the Code. Petitioners then commenced the instant CPLR article 78 proceeding, which resulted in the judgment annulling the DHCR's order and remanding to the DHCR for redetermination, which judgment is now the subject of this appeal. We conclude that there is a rational basis for DHCR's determination, and that it must accordingly be reinstated.

It is undisputed that St. Mary's is operated as a non-profit organization by the Daughters of Divine Charity, an order of Roman Catholic nuns who live in a convent located on the second floor of the premises. A small portion of the eleven story structure has a chapel where religious services are conducted. St. Mary's was originally incorporated on September 15, 1923, being formed under the former Membership Corporations Law of New York State. Its certificate of incorporation was amended on November 5, 1981 to provide that it shall be a corporation as defined in section 102 (a) (5) of the Not-For-Profit Corporation Law and that it be classified as a type B corporation under section 201 of that law. The statement of powers and purposes was amended to read, in pertinent part, as follows:

"a) To provide a home under proper moral influence for young women of limited means (especially those without a parental home) without regard to race, color or creed in accordance with the ministry of the Roman Catholic Order of the Daughters of Divine Charity * * *

"b) To provide young women who are without funds and homeless with a temporary home without charge.

"c) To provide for the celebration of mass in the Roman Catholic chapel in the home and to offer other exercises in the Roman Catholic religion to those residents who wish to avail themselves of such services and exercises.

"d) To maintain a convent of the Roman Catholic order of the Daughters of Divine Charity at the home.

"e) To undertake such other charitable and religious works as will be for the temporal and Spiritual good of young women in need thereof.

"f) To do any other act or thing incidental to or connected with the foregoing purposes or in advancement thereof but

not for the pecuniary profit or financial gain of its members, directors or officers except as permitted under Article 5 of the Not-for-Profit Corporation Law."

St. Mary's conclusively established its operation on a non-profit basis through statements of its chief operating officer, by showing its Federal tax exempt status as an organization described in section 501 (c) (3) of the Internal Revenue Code (26 USC), its exemption from New York State sales and use tax as an organization described in section 1116 (a) (4) of the New York Tax Law, and that the premises are exempt from real property taxes under section 420-a of the New York Real Property Tax Law as owned and used for charitable purposes and operated on a non-profit basis. These undisputed facts established that the premises are operated for charitable purposes on a non-profit basis, and DHCR should not have been ordered to obtain documentation that all income from the subject rooms is used exclusively for charitable purposes and not, in part, for the religious functions of St. Mary's.

The IAS Court erroneously concluded (1) that DHCR was incorrect in its assertion that section 2520.11 (j) of the Code looked to the use of the building itself, and (2) that the Code denied the exemption to " 'residential housing accommodations located in buildings owned or operated by a charitable institution where the apartments are not operated on a non-profit charitable basis' " (quoting *Matter of Cornerstone Baptist Church v Rent Stabilization Assn.*, 55 AD2d 952, 953).

The IAS Court's reliance upon *Cornerstone Baptist Church* was misplaced. The *Cornerstone* decision stands for the proposition that the ETPA of 1974 merely added certain classes of housing accommodations to the coverage of the Rent Stabilization Law (RSL) of 1969, and did not exempt any accommodations that were previously subject to the RSL. It therefore held that the exemption set forth in section 5 (a) (6) of the ETPA only relates to previously uncontrolled or vacancy decontrolled housing accommodations owned or operated by a charitable institution. The Court found that such apartments are exempt from the ETPA in that they were not added to the coverage of the RSL and retain their unregulated status. *Cornerstone* was therefore determined without regard to the provisions of the ETPA because the subject tenant therein was adjudged to be protected by the RSL of 1969 notwithstanding the enactment of the ETPA. In other words, even though the RSL was amended by the ETPA, the ETPA did not exempt housing accommodations that were already subject to the RSL, and created no new exemptions to the RSL.

In the instant case, the IAS Court quoted *Cornerstone (supra)* out of context. The language quoted by the IAS Court must be read in a manner that is consistent with the previous language of that memorandum opinion wherein the Court clarified the distinction between paragraphs (6) and (10) of section 5 (a), stating that the character of the owner is not relevant to the application of section 5 (a) (10)—the ETPA section at issue in the instant case. Where the *Cornerstone* decision referred to the Rent Stabilization Law of 1969, "as amended" by the ETPA *(supra,* at 952), that meant, in context, "even though amended by the ETPA." The Appellate Division, Second Department further clarified this point when it later stated that: "The exemption provided for in section 5 (subd a, par [6]) of the ETPA only relates to previously uncontrolled or vacancy decontrolled housing accommodations owned or operated by a charitable institution. Such apartments are exempt from the ETPA, i.e., they were not added to the coverage of the Rent Stabilization Law and retain their uncontrolled status." *(Supra,* at 953.)

Therefore the partial quotation relied upon by the IAS Court referred not to the ETPA, but rather to the RSL. *Cornerstone (supra)* was determined solely in accordance with the provisions of the RSL without regard to the ETPA. The IAS Court thus utilized the partial quotation in a manner at variance with the language that immediately precedes it.

The DHCR properly found, on facts amply demonstrated by the record, that the one floor out of eleven used by the nuns who operate the building for their personal quarters, which was segregated from the apartments here at issue, and the chapel in which they worshiped (available also to the residents of the premises) were merely incidental to the building's charitable use. Services are not open to the general public. It is well established that "exclusively" as used in the context of exemption statutes means "principal" or "primary," and that uses merely auxiliary or incidental to the main exempt purpose and use will not defeat the exemption *(Matter of Association of Bar v Lewisohn,* 34 NY2d 143, 153; *Matter of Fayez Rest. v State Liq. Auth.,* 66 NY2d 978; *Matter of Yeshivath Shearith Hapletah v Assessor of Town of Fallsburg,* 79 NY2d 244, 249). Concur—Carro, J. P., Milonas, Wallach and Kassal, JJ.