Chadwick Gardens Assoc., LLC v City of Newburgh (2024 NY Slip Op 50470(U))

[*1]

Chadwick Gardens Assoc., LLC v City of Newburgh

2024 NY Slip Op 50470(U)

Decided on April 19, 2024

Supreme Court, Orange County

McElduff, Jr., J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on April 19, 2024
Supreme Court, Orange County

Chadwick Gardens Associates, LLC, and Nutopia 203 Grand, LLC, and 
 Hudson Valley Property Owners Association, Inc., Plaintiffs-Petitioners,

against
The City of Newburgh, Torrance Harvey in his capacity as Mayor of the City of Newburgh, the Common Council of the City of Newburgh, the City of Newburgh Department of Planning and Development and the New York State Division of Housing and Community Renewal, Defendants-Respondents.

Index No. EF001874-2024

Benjamin F. Neidl, Esq., of counsel to E. Stewart Jones, Hacker, Murphy, LLP, attorney for Petitioners
Paul E. Svensson, Esq. and Michael K. Burke, Esq., of counsel to Hodges, Walsh & Burke, LLP, attorney for Respondents City of Newburgh, Torrance Harvey as Mayor of the City of Newburgh, The Common Council of the City of Newburgh and The City of Newburgh Department of Planning and Development
Letitia James, Esq., Attorney General of the State of New York, by Heather R. Rubinstein, Esq., Assistant Attorney General, attorney for Respondent New York State Division of Housing and Community Renewal

Timothy P. McElduff, Jr., J.

The Court has considered the following submissions relating to Petitioners' hybrid CPLR Article 78 proceeding and CPLR § 3001 declaratory judgment action and motion for preliminary injunction:
1. Petitioners' Order to Show Cause, Petition with Exhibits A through O, Memorandum of Law in Support, Fisher Affirmation with Exhibits A through C, Liani Affirmation with [*2]Exhibits A through C, Rosenstein Affirmation with Exhibits A and B, Epstein Affirmation, Fekishazy Affirmation, Mandel Affirmation, Mileo Affirmation, Neidl Affirmation with Exhibits A and B Supplemental Neidl Affirmation with Exhibits A through D;
2. Answer of the Newburgh Respondents with Exhibits A through F, Memorandum of Law in Opposition;
3. Answer of Respondent NYS Division of Housing and Community Renewal, Rubinstein Affirmation in Opposition, Memorandum of Law in Opposition;
4. Neidl Reply Affirmation with Exhibits 1 and 2, Lanzarone Reply Affirmation with Exhibits A through D; Rosenstein Reply Affirmation with Exhibit 1; Memorandum of Law in Reply;
5. Svensson Sur-Reply Affirmation.
Background
By Resolution of December 18, 2023 (the "Resolution"), the City of Newburgh declared that a public housing emergency existed under the Emergency Tenant Protection Act of 1974 (the "ETPA," NY Unconsol. Law §§ 8621-8634) requiring the regulation of certain residential rents and leases in the City of Newburgh. The Resolution was based upon a Rental Vacancy Study dated November 6, 2023, which was prepared by the City of Newburgh Department of Planning and Development (the "Vacancy Study").
To declare a public housing emergency under the ETPA, the vacancy rate of the given municipality must not exceed 5.0%. See NY Unconsol. Law § 8623(a). Pursuant to the Vacancy Study, the City determined that the vacancy rate equaled 3.930%.
Petitioners Chadwick Gardens Associates, LLC, Nutopia 203 Grand, LLC and Hudson Valley Property Owners Association, Inc., commenced this hybrid proceeding on March 5, 2024, by Order to Show Cause, which contained a request for a temporary restraining order to maintain the status quo pending the challenge to the City's Resolution. Simultaneously, Petitioners' counsel provided notice of his application for temporary injunctive relief, as well as a copy of Petitioners' papers, to the Respondents pursuant to 22 NYCRR 207(f). On March 6, 2024, approximately 24 hours after said notice, the Court signed the Order to Show Cause, granted the temporary injunctive relief therein without opposition and set the return date of April 5, 2024, at 9:30 a.m. 
Briefly summarized, the Petitioners contend that the City's determination of the vacancy rate was affected by several errors of an irrational, arbitrary and/or capricious nature, which artificially lowered the vacancy rate below 5.0%. Thus, the Petitioners conclude that, but for the errors, the vacancy rate would have exceeded 5.0% and, as a result, the ETPA cannot apply as a matter of law.[FN1]

Continuance of the Temporary Restraining Order and Request for Preliminary Injunction
All papers were fully submitted by the parties by the return date of April 5, 2024, at 9:30 a.m., at which time the Court heard oral argument from the parties concerning the request for a preliminary injunction and the merits of the petition. Additionally, at oral argument, the Respondents opposed the continuance of the Temporary Restraining Order pending the Court's [*3]determination of the motion for a preliminary injunction. 
Based upon the papers submitted and the oral argument conducted on April 5, 2024, the Petitioners established their right to the continuance of the Temporary Restraining Order, which is temporary injunctive relief based upon a showing that immediate and irreparable injury, loss or damage will result unless restraint is issued before motion for a preliminary injunction can be fully heard and decided. See CPLR § 6313. 
"To establish the right to a preliminary injunction, a plaintiff must prove by clear and convincing evidence (1) the likelihood of ultimate success on the merits, (2) irreparable injury absent the grant of the injunction, and (3) a balance of the equities in the plaintiff's favor." 19 Patchen, LLC v. Rodriguez, 153 AD3d 1382, 1383 (2d Dept. 2017) (further stating that the decision to grant a preliminary injunction is matter committed to the sound discretion of the trial court); see also CPLR § 6301.
Regarding the likelihood of success on merits, the Court finds that there is a sufficiently clear likelihood that the City had irrationally, arbitrarily and/or capriciously failed or refused to account for certain vacancies in its Vacancy Study, which were indicated on certain property owners' vacancy survey response forms and, in some instances, further explained to the City Planner prior to the City's Resolution declaring an emergency under the ETPA. 
Regarding irreparable harm, the Court finds that the rent and lease renewal regulations of the ETPA would cause irreparable harm to the Petitioners/property owners. See, e.g., Berry Estates., Inc. v. Marrero, 74 AD2d 871 (2d Dept. 1980) (finding that the property owners' potential loss of legally collectable rents during the pendency of a legal challenge to the applicability of EPTA rent regulation constituted irreparable loss). Furthermore, the fact that ETPA regulates and restricts several aspects of the use of private property should not be overlooked or understated. Apart from the loss or fixing of rents, the ETPA's restriction on the use of private property (e.g., lease renewal regulations) constitutes irreparable harm. See, e.g., Laker v. Ass'n of Prop. Owners of Sleepy Hollow Lake, Inc., 172 AD3d 1660 (3d Dept. 2019) (finding that a restriction placed upon the short-term rental use of real property constituted irreparable harm sufficient to warrant a preliminary injunction).
As to the balancing of the equities, the Court finds that, while the City has a responsibility to address public housing emergencies in the short term, the irreparable injury of losing certain private property rights is more burdensome to the Petitioners/property owners in the long term. For example, if the ETPA regulations went into place and were later nullified, the Petitioners would not have a remedy to sue the municipality for money damages (e.g., from loss of rent or rental opportunities) since such damage would have arisen from a legislative act, i.e., the City's declaration of emergency pursuant to the ETPA. See, e.g., Nocro v. Russell, 94 AD3d 894 (2d Dept. 2012) (discussing legislative immunity). Similarly, for example, the Petitioners would not have remedy to summarily "undo" renewed leases under ETPA regulations if the City's Resolution/ETPA declaration were subsequently nullified. 
Consequently, under the circumstances presented here, Petitioners have established their legal entitlement to a preliminary injunction.

The Merits of the Petition
While a presumption of validity attaches to legislative enactments, that presumption cannot be applied in ETPA cases where the implementing legislation requires the local legislative body to first make a particular factual finding. Hudson Valley Prop. Owners Ass'n, Inc. v. City of Kingston New York, No. CV-23-0327, 2024 WL 1200925, at *2 (NY App. Div. [*4]Mar. 21, 2024); Spring Val. Gardens Assoc. v. Marrero, 68 NY2d 627, 629 (1986).
The issuance of an emergency declaration under the ETPA is a discretionary matter for a municipality and, therefore, a petitioner must bear the burden of establishing that the municipality's determination lacked a rational basis or was arbitrary and capricious. Hudson Valley Prop. Owners Ass'n Inc. v. City of Kingston New York, No. CV-23-0327, 2024 WL 1200925, at *2 (NY App. Div. Mar. 21, 2024). It must be noted, however, that an emergency declaration need not be based upon the results of a complete survey of all housing, but, rather, need only flow from a common sense approach and a good faith study derived from precise data. See Executive Towers at Lido, LLC v. City of Long Beach, 37 AD3d 650, 652 (2d Dept. 2007), lv. denied 9 NY3d 813 (2007) (city's vacancy report failed to meet the standard of "a good faith study derived from precise data" where plaintiffs demonstrated that the true vacancy rate exceeded 5.0% and plaintiffs were entitled to summary judgment awarding a declaratory judgment stating that the housing emergency under the ETPA had ended).
Briefly summarized, the Petitioners contend that the errors of (1) improper inclusion of certain allegedly exempt charitable organizations' buildings, (2) improper inclusion of certain allegedly exempt "substantially rehabilitated" buildings and (3) improper omission of certain reported vacancies affected the City's mathematical determination of the vacancy rate, resulting in an inaccurate, artificially low, below-5.0% vacancy rate that would qualify for regulation under the ETPA. 
Regarding the allegedly exempt "substantially rehabilitated" buildings, the Petitioners failed to demonstrate that the City acted arbitrarily or capriciously or irrationally by including them in the vacancy calculation. See NY Unconsol. Laws § 8625(a)(5). Instead, the City demonstrated that the owners of the allegedly substantially renovated buildings (55 Broad Street, 120 Johnston Street, 77-79 Broadway and 156 Washington Street) failed or refused to properly and/or timely complete their survey responses or to respond to other inquiries from the City. (See Midler Affidavit, ¶¶30-35). Accordingly, the City did not act irrationally, arbitrarily or capriciously by failing to consider these buildings exempt from the ETPA and including them in the Vacancy Study.
Regarding the inclusion of certain allegedly exempt charitable organizations' buildings, the Petitioners failed to demonstrate that 51 Leroy Place and 99 Dubois Street were operated exclusively for charitable purposes on a non-profit basis. See NY Unconsol. Laws § 8625(a)(6). Instead, the City demonstrated that it took rational, investigative steps to determine that these buildings were not exempt charitable/non-profit buildings for the purposes of § 8625(a)(6). (See Midler Affidavit, ¶¶16-22).
It should also be noted that there are administrative proceedings to determine exemption status under the ETPA, whether for charitable use reasons or for substantial rehabilitation reasons or for other reasons. See, e.g., H.M. Vill. Realty v. New York State Div. of Hous. & Cmty. Renewal, 304 AD2d 346 (1st Dept. 2003) (concerning a substantial rehabilitation exemption); Boiko v. Higgins, 195 AD2d 279 (1st Dept. 1993) (concerning a charitable purpose exemption). On this record, however, there is no indication that any of the relevant property owners sought a determination as to their exemption status at any time.
Regarding the omission of certain reported vacancies from the Vacancy Study, the Petitioners have established that certain vacancies were properly and timely reported to the City but, nevertheless, not counted by the City in its Vacancy Study.
Regarding 376-379 Powell Avenue, the property manager, Scott Rosenstein, reported 13 [*5]"unoccupied" units in response to Vacancy Survey Question #7, which asked how many units were presently unoccupied. (See Exhibit A to Rosenstein Affirmation). Question #8 asked if any of the unoccupied units are currently off the market or unavailable for rent, "yes" or "no." Mr. Rosenstein indicated "yes." Question #9 asked, "If you answered 'yes' to question eight (8), how many units are off the market and why? (e.g., undergoing renovation, uninhabitable, a tenant is moving in at later date, etc.)." Mr. Rosenstein answered, "5 now — immediate. Other under renovations." This response was poorly stated and ambiguous; however, it was also the product of a poorly constructed and ambiguous survey, which could have simply asked, for example, "Of the unoccupied units indicated above, how many are vacant and currently available for rent?" However, the City's "Vacancy Survey" never asked a single, direct question concerning vacancy or availability for rent. (See Exhibit A to Rosenstein Affirmation). Any ambiguity of Mr. Rosenstein's response, however, was removed by his e-mail to Jonathan Midler, City Planner and conductor of the Vacancy Survey, dated December 7, 2023. (See Exhibit B to Rosenstein Affirmation). Therein, Mr. Rosenstein informed Mr. Midler that the Vacancy Study (published on November 6, 2023) was incorrect concerning the vacancies previously he reported at 376-379 Powell Avenue. Mr. Rosenstein explained that he had 5 vacancies, meaning 5 units available "immediately, meaning now" while the 8 other remaining units were under renovation, not all 13. It is undisputed that (1) Mr. Midler received Mr. Rosenstein's e-mail dated December 7, 2023, (2) Mr. Midler never responded to Mr. Rosenstein or to the December 7, 2023, e-mail in any manner and (3) Mr. Midler otherwise failed to edit or correct the Vacancy Study, accordingly, prior to the City's Resolution on December 18, 2023, despite having the clarification in-hand and the time and opportunity to make such an edit/correction. Under these circumstances, Mr. Midler's failure to include the 5 reported vacancies for 376-379 Powell Avenue in the Vacancy Study was irrational, arbitrary and capricious.
Regarding 155 Ann Street, the property manager, Eli Fisher, reported 3 unoccupied units, each of which were available to rent (or as the survey framed it, "not unavailable to rent"). (See Exhibit B to Fisher Affirmation). In his affidavit in opposition, Mr. Midler incorrectly stated that Mr. Fisher reported that "none of those units were vacant." (See Midler Affidavit, ¶27). To the contrary, on its face, Mr. Fisher's survey response clearly stated that 3 units were unoccupied and available to rent. (Compare Exhibit B to Fisher Affirmation). Mr. Midler further stated that, for unidentified reasons, he independently investigated 155 Ann Street and noted that there were 6 units at the site, which was formerly known as two buildings, 155-159 Ann Street, and that he believed that 3 units were occupied. (See Midler Affidavit, ¶¶26-27). Notably, Mr. Midler did not find that all 6 units were occupied. It is undisputed that Mr. Midler never contacted or otherwise questioned Mr. Fisher regarding his survey response, which was limited to "155 Ann Street" on its face. Even assuming that Mr. Midler accurately found that 3 of 6 units were occupied upon his investigation of the 155-159 Ann Street site, his investigation still did not disprove or even raise a genuine issue of fact concerning Mr. Fisher's survey response, which reported 3 unoccupied units available to rent at 155 Ann Street. Under these circumstances, Mr. Midler's failure to include the 3 reported vacancies for 155 Ann Street in the Vacancy Study was irrational, arbitrary and capricious.
Regarding 494 Broadway, the property manager, Eli Fisher, reported 2 unoccupied units, each of which were available to rent. (See Exhibit A to Fisher Affirmation). It is undisputed that Mr. Midler never contacted or otherwise questioned Mr. Fisher regarding his survey [*6]response. In opposition to the petition, Mr. Midler stated that, from his review of assessor records, Mr. Fisher undercounted the total number of rental units at 494 Broadway, in that there should be 10 units, not 8 units.[FN2]
(See Midler Affidavit, ¶28). Mr. Midler did not state that he found each the units at 494 Broadway to be occupied or that Mr. Fisher's original survey response indicating 2 unoccupied units was somehow inaccurate. Further, Mr. Midler offered no explanation as to why he failed to count the 2 reported vacancies at 494 Broadway in the Vacancy Study. Under these circumstances, Mr. Midler's failure to include the 2 reported vacancies for 494 Broadway in the Vacancy Study was irrational, arbitrary and capricious.
Regarding 81-83 Williams Street, the property owner's principal, Alan Liani, confirmed 2 unoccupied units, each of which were available to rent, directly to Mr. Midler via phone and e-mail in July 2023, prior to Mr. Midler's completion of the Vacancy Study. (See Liani Affirmation and Exhibits A through C; See Lian Reply Affirmation and Exhibit 1). When the City published the Vacancy Study on November 6, 2023, Mr. Liani discovered that Mr. Midler had failed to account for the 2 vacancies that he had previously reported directly to Mr. Midler and confirmed in writing to him in an e-mail. On December 7, 2023, Mr. Liani e-mailed Mr. Midler again to inform Mr. Midler that the Vacancy Study was incorrect concerning the vacancies previously he reported at 81-83 Williams Street. It is undisputed that (1) Mr. Midler received Mr. Liani's e-mail dated December 7, 2023, (2) Mr. Midler never responded to Mr. Liani or to the December 7, 2023, e-mail in any manner and (3) Mr. Midler otherwise failed to edit or correct the Vacancy Study, accordingly, prior to the City's Resolution on December 18, 2023, despite having the clarification in-hand and the time and opportunity to make such an edit/correction. In his affidavit in opposition, Mr. Midler merely stated, "I attempted to confirm information via phone call and e-mail. The City stands by its determination in the Study." (See Midler Affidavit, ¶29). Mr. Midler's sworn statement on this issue is belied by the uncontradicted documentary evidence and demonstrably disingenuous pursuant to the same. Under these circumstances, Mr. Midler's failure to include the 2 reported vacancies for 81-83 Williams Street in the Vacancy Study was irrational, arbitrary and capricious.
For these reasons, this Court finds that the City undercounted its vacancies available for rent by a total of 12 units in the Vacancy Study and, as such, the Vacancy Study's "Vacant Units Available for Rent" should equal 41, not 29. (See Exhibit B to the Petition). Therefore, of the 738 "Units Included in Survey," the 41 actual vacant units available for rent yields an actual vacancy rate of 5.555%, not 3.930%.
Accordingly, Petitioners have demonstrated that the City's calculation of the vacancy rate under its Vacancy Study lacked a rational basis and was calculated in an arbitrary and capricious manner and, consequently, the City's reliance on incorrect, imprecise vacancy data in adopting the Resolution declaring a housing emergency under the ETPA also lacked a rational basis. Having shown that the true vacancy rate exceeded 5.0%, the ETPA is inapplicable as a matter of law and the Petitioners are entitled to a judgment declaring that the Resolution of December 18, 2023, is null and void and declaring that the e, as requested in the Petition herein. See Executive Towers at Lido, LLC v. City of Long Beach, 37 AD3d 650, 652 (2d Dept. 2007).
For the foregoing reasons, it is hereby
ORDERED that the Petition is granted; and it is further
ORDERED that Petitioners shall submit their proposed Judgment on notice to the Respondents within 15 days of the date of this Decision and Order; and it is further
ORDERED that, pending the entry of the Judgment herein, the Temporary Restraining Order granted in the Order to Show Cause dated March 6, 2024, shall remain in full force and effect through the date of entry of the Judgment, and that the Petitioner's request for a preliminary injunction is mooted due to the Petition having been fully granted herein.
This constitutes the Decision and Order of the Court.
Dated: April 19, 2024
Goshen, New York
Hon. Timothy P. McElduff, Jr., A.J.S.C.

Footnotes

Footnote 1:By a combination of alleged errors, the Petitioners argue that the actual vacancy rate was as much as 7.56%.

Footnote 2:In reply, and at oral argument, Petitioners' counsel stated that 494 Broadway contained 2 commercial units and 8 residential units.